IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

LEONARD GULBRONSON,

    Plaintiff,

v.                                       CASE NO. 1:19-cv-156-AW-GRJ

CLINT ANDERSON, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant James Anderson's Motion for Summary Judgment. ECF No. 71. Plaintiff, proceeding *pro se*, filed a response in opposition. ECF No. 75. The motion, therefore, is ripe for consideration. For the reasons discussed below, it is respectfully **RECOMMENDED** that the motion for summary judgment should be **DENIED**.

### I. BACKGROUND

On August 23, 2017, at about 4:00 p.m., Plaintiff was at his home in Chiefland, Fla., when he heard loud footsteps and muffled voices from outside. ECF No. 9 at 5; ECF No. 71-1 at 26–27.[1] Out of fear, Plaintiff and

---

[1] Plaintiff signed under penalty of perjury the First Amended Complaint, ECF No. 9, and his response in opposition to Defendant's motion for summary judgment, ECF No. 75.

his girlfriend hid in a hallway closet. ECF No. 9 at 5. Unidentified law enforcement officers proceeded to kick in the door, identified themselves as officers, and yelled for anyone in the house to come out with their hands up. *Id.* Plaintiff and his girlfriend left the closet with their hands in the air. *Id.*; ECF No. 71-1 at 34.

Levy County Sheriff's Office Deputy James "Jimmy" Anderson directed Plaintiff's girlfriend to the living room, grabbed Plaintiff's wrists (while Plaintiff's hands were still in the air), and "slung him to the ground on his stomach." ECF No. 9 at 5; ECF No. 71-1 at 34, 36. While on the ground, Plaintiff saw Gilchrist County Sheriff's Office Detective Clint Anderson, Deputy Anderson's brother, standing by the entrance to the living room and pointing his pistol at Plaintiff. ECF No. 9 at 5. Plaintiff was not resisting arrest, being verbally abusive, or threatening law enforcement. ECF No. 75 at 3.

As Plaintiff was lying on his stomach and secured in handcuffs, Deputy Anderson moved from Plaintiff's back and let Detective Anderson

---

These filings, therefore, are treated by the Court like sworn affidavits in the summary judgment record. *See Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019) (treating a plaintiff's "statements in his verified complaint" and "sworn response to the officers' motion for summary judgment" as testimony); *Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[T]his Court has recognized that facts alleged in an inmate's sworn pleading are sufficient [to defeat a properly supported motion for summary judgment] and that a separate affidavit is not necessary."). Plaintiff also provided sworn testimony in a discovery deposition conducted by Defendants' counsel. ECF No. 71-1.

"straddle over Plaintiff." ECF No. 9 at 5–6; ECF No. 71-1 at 36–37. Detective Anderson, still holding his pistol, grabbed Plaintiff's hair, pulled Plaintiff's head back, and "jammed his service pistol into Plaintiff's temple." ECF No. 9 at 6. Detective Anderson yelled threats at Plaintiff, including: (1) "Mother fucker, how do you like it now?"; (2) "Want me to put a bullet in your head so you'll know it feels?"; and (3) "I'll blow your fucking head off, mother fucker!" *Id.*; ECF No. 71-1 at 40–41. Deputy Anderson remained standing on Plaintiff's left side and did not leave the room. ECF No. 75 at 41. Detective Anderson released his grip on Plaintiff's hair and contemporaneously struck the top rear portion of Plaintiff's head with his pistol, causing Plaintiff to lose consciousness. ECF No. 9 at 6; ECF No. 71-1 at 41–42. Plaintiff estimates this incident "lasted 30 to 45 seconds." ECF No. 75 at 6; *see also id.* at 15 ("[T]he elapsed time in which the threats and verbal abuse lasted … [was] approximately 30 seconds to [one] minute.").

When Plaintiff woke up, Detective Anderson and Deputy Anderson were "spreading open" Plaintiff's head wound and taking photos of the wound with their cell phones. ECF No. 9 at 6. Plaintiff saw blood and bloodied towels on the floor and heard an ambulance siren. *Id.* Plaintiff was escorted to an ambulance and transported to Williston General

Hospital. *Id.* Plaintiff "received staples in his head" at the hospital. *Id.* Finally, Plaintiff was taken to the Levy County Jail for booking before the Gilchrist County Sheriff's Office "picked him up." *Id.*

Plaintiff alleged in his First Amended Complaint that Deputy Anderson "failed to prevent and/or advise his brother, Detective Clint Anderson with the Gilchrist County Sheriff's Dept.[,] to refrain from interfering with, arresting, assisting in the arrest, being inside of the premises during the arrest of Plaintiff as well as failing to stop [Detective Anderson] from using excessive force … upon Plaintiff." ECF No. 9 at 13. Put simply, this is a "failure to intervene" claim under the Fourth Amendment and 42 U.S.C. § 1983. Deputy Anderson contends in the instant motion for summary judgment that he is entitled to qualified immunity because there was no clearly established constitutional violation. ECF No. 71 at 2.

## II.  LEGAL STANDARD

### A.  Summary Judgment

The entry of summary judgment is appropriate when the Court is satisfied "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the Court must examine the pleadings,

4

depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988).  "The nonmovant need not be given the benefit of every inference but only of every reasonable inference."  *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the movant bears the initial burden of establishing the nonexistence of a triable issue of fact.  This, however, does not require the movant to disprove matters on which the non-moving party bears the burden of proof at trial.  *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1396 (11th Cir. 1994).  "[T]he moving party simply may show—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *United States v. Four Parcels of Real Property in Green and Tuscaloosa Counties in the State of Alabama*, 941 F.2d 1428, 1438 (11th Cir. 1991) (alterations adopted).

If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove."  *Rollins v.*

*TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785–86 (11th Cir. 2005). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).

### B. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An official wishing to invoke the affirmative defense of qualified immunity must have been acting within his discretionary authority. *Skop v. City of Atlanta,* 485 F.3d 1130, 1136 (11th Cir. 2007). If a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not proper. *Lee v. Ferraro*, 284 F.3d 1188, 1197-98 (11th Cir. 2002).

To determine whether qualified immunity applies to a government official performing a discretionary function, the Court must consider two factors: (1) whether the evidence shows that the official's conduct violated a constitutional right; and (2) whether the right was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Court has the discretion to address the two prongs in either order. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

### III.  DISCUSSION

Deputy Anderson argues he is entitled to qualified immunity because Plaintiff fails to demonstrate otherwise. According to Deputy Anderson, Plaintiff cannot show that he was in a position to intervene in Detective Anderson's use of excessive force *or* that the law was clearly established he had a duty to intervene if he did "not have sufficient time to react to Clint Anderson's alleged action … done without warning." ECF No. 71 at 5. Defendant's attempt to invoke qualified immunity at the summary judgment stage is not well-taken.

"If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under § 1983." *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986); *see also Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1560 (11th Cir. 1993) ("A police officer has a duty to intervene when another officer uses excessive force."). Moreover, an officer has the constitutional duty to intervene when he has "reason to expect the use of excessive force[.]" *Riley v. Newton*, 94 F.3d 632, 635 (11th Cir. 1996). "But it must also be true that the non-intervening officer was in a position to intervene yet failed to do so." *Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008).

Genuine issues of material fact preclude summary judgment on Plaintiff's failure to intervene claim because there is sufficient evidence from which the jury may determine Deputy Anderson had a duty to intervene and was in a position to do so. Plaintiff's sworn testimony, on at least three occasions (in his First Amended Complaint, his deposition, and his response to the instant motion), has been as follows. After Deputy Anderson threw Plaintiff to the ground and placed him in handcuffs, Plaintiff was lying on his stomach and not resisting arrest. Then, Detective Anderson straddled Plaintiff's back and—for at least 30 seconds (up to one

minute)—yelled profanities and threatened him with physical harm before striking the back of Plaintiff's head with a firearm.  Plaintiff says Deputy Anderson did not leave the room, and, therefore, the jury may infer that Deputy Anderson witnessed Detective Anderson's actions and had time to intervene by force or verbal command.  *Bailey v. City of Miami Beach*, 476 F. App'x 193, 196–97 (11th Cir. 2012); *Williams v. Scott*, 433 F. App'x 801, 805 (11th Cir. 2011); *see also Howard v. Wilkinson*, 380 F. Supp. 3d 1263, 1282 (M.D. Fla. 2019) (recognizing there is "no minimum time-to-reflect threshold that must be exceeded to make out an actionable claim" for failure to intervene).

It also bears emphasizing that the record affirmatively contradicts Deputy Anderson's assertion that Detective Anderson acted "without warning" prior to his supposed use of excessive force.  ECF No. 71 at 5. Namely, prior to "pistol whipping" Plaintiff, Detective Anderson repeatedly threatened him with physical harm. *See, e.g.*, ECF No. 9 at 6 ("I'll blow your fucking head off, mother fucker!"); ECF No. 71-1 at 41 ("I'll blow your fucking brains out.").

Lastly, the duty to intervene was clearly established in the Eleventh Circuit more than 35 years ago.  *See Bailey*, 476 F. App'x at 196 ("It is clearly established in this Circuit 'that an officer who is present at the scene

and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance.'" (citing *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341–42 (11th Cir. 2007))); *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 927 (11th Cir. 2000) ("That a police officer had a duty to intervene when he witnessed the use of excessive force and had the ability to intervene was clearly established in February 1994." (citing *Byrd*, 783 F.2d at 1007)). Although Deputy Anderson is correct that there is no clearly established duty to intervene when there is not "sufficient time to react" or "without warning," this argument rests on his unsworn characterization of the events giving rise to this case, not the summary judgment record.

In sum, Deputy Anderson is not entitled to qualified immunity because there is a genuine issue of material fact as to whether he violated his clearly established constitutional duty to intervene in Detective Anderson's use of force against Plaintiff. Therefore, his motion for summary judgment is due to be denied.

## IV.  CONCLUSION

Accordingly, it is respectfully **RECOMMENDED** that Defendant James Anderson's Motion for Summary Judgment, ECF No. 71, should be **DENIED**.

**IN CHAMBERS** this 23rd day of February 2021.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.